# In re Division of Election Precincts

C. P. of Dauphin County, no. 4942 S 2000.

*Jack C. Garner,* petitioner, pro se.
*Kevin J. McKeon* and *Scott T. Wyland,* for Dauphin County Board of Elections.

CLARK JR., *J.,* December 21, 2000—

## FACTUAL HISTORY

This petition for division of certain election districts in Dauphin County was submitted to the court for review and approval on November 6, 2000. On November 8, 2000, the court entered an order setting November 29, 2000, at 1:30 p.m., in court room no. 6, as the date, time and place for a hearing on the petition, as required by law.

Subsequent to entry of said order, the Dauphin County Board of Elections, by and through its authorized agents, posted notices of said petition and court order throughout the area of the election districts, again, as required by law.

On November 27, 2000, Jack G. Garner OD, filed a petition to be added as a party and motion for continuance. On November 28, 2000, the board, through special counsel, filed a response to Dr. Garner's petition and motion.

On November 29, 2000, at 1:30 p.m., this court convened the hearing specified in the previous order, with the board being represented by special counsel and Dr.

Garner appearing pro se. The court initially determined that Dr. Garner had individual standing to participate in the hearing, inasmuch as he was a duly registered elector from one of the election districts that would be affected by the proposed action in the petition. Thereafter, the court took testimony from the petitioner (board) and Dr. Garner was permitted to conduct reasonable cross-examination of the petitioner's witnesses. At the conclusion of the testimony submitted by the petitioner, the court permitted the record to remain open, and set Monday, December 11, 2000, at 2:30 p.m. as the date and time for a continuance of the hearing, so as to afford Dr. Garner an opportunity to further review the facts and circumstances of the matter, and so that he (Garner) could also be afforded an opportunity to resolve his concerns through direct communication with petitioner's special counsel.

On or about December 8, 2000, the petitioner and Dr. Garner filed a stipulation and proposed final order concerning all outstanding matters and issues associated with the petition. The stipulation specifically withdrew any objections that Dr. Garner had to the contents of the petition, as being resolved by the proposed final order. The matter is now ripe for the court's action.

## DISCUSSION

The Election Code of this Commonwealth, 25 P.S. §2701 et seq., and in particular 25 P.S. §2704, as amended, authorizes the County Board of Elections to petition the court of common pleas to approve the divi-

sion or redivision of any election district(s) within the county.

25 P.S. §2702, as amended, sets forth the criteria that the court should consider when passing upon a request for division or redivision, and specifically establishes the minimum and maximum[1] number of electors that should comprise the new election districts.

It is undeniable that the election districts proposed to be divided by the petition were long overdue for such consideration. Indeed, reports of the most recent general election on November 7, 2000, indicate serious backlogs of electors at numerous polling stations, including those addressed in the petition.

It is fundamental to our democratic form of government that the franchise of the vote be protected, preserved and encouraged at all costs. Recent national events illustrate the absolute necessity of ensuring this franchise to all electors. When an election district is allowed to double or even triple in its maximum allowable size, the burden on the electors cannot be overstated. A citizen who must wait in long lines, sometimes out-of-doors in inclement weather, will not readily be inclined to cast their vote. Every vote is precious to our democracy!

Therefore, it is with this view that this court approves of the instant petition. However, we are likewise constrained to observe that, in some regards, the proposed division of certain election districts did NOT go far enough.

---

1. The minimum number of registered electors is 100 and the maximum number of registered electors is 1,200. Furthermore, the said maximum number can be exceeded for "good cause shown."

This is particularly acute where certain districts, which were grossly overcrowded to begin with, were proposed for redivision into districts that were in excess of the 1,200 elector maximum that is established in 25 P.S. §2702, as amended. The court observes that in those districts which are at or approaching the statutory maximum, it will be a rather short time until the issue of division or redivision will have to be addressed again.

Using the parameters that are given to us by the General Assembly (25 P.S. §2702), and taking into consideration a reasonable growth factor for various areas, it appears to the court that in a proposed election district, where considerable growth is a real possibility, the optimal district size should be between 600 and 800 registered electors. Likewise in election districts where potential growth is not as great, or the area is already built out to near its reasonable limit, a proposed election district of between 800 and 1,000 registered electors is appropriate. Therefore when the year 2000 census data becomes available for use in calculating population density, it is highly recommended that the board of elections move promptly to address any other burgeoning election districts, thus relieving, to the degree possible, the burden on our electors.

Therefore, based upon the testimony presented at the hearing, and upon consideration of the data and exhibits adduced at said hearing, the court finds it necessary and appropriate to approve the petition as filed by the board, inasmuch as such division and/or redivision is absolutely imperative to the conduct of good and efficient elections within the County of Dauphin.